EXHIBIT A

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE COUNTY OF FRANKLIN

| | | |
|---|---|---|
| **FRANKLIN CLINIC CORP.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No. CL10004652** |
| | ) | |
| **CHARLES B. LOVELADY, M.D.,** | ) | |
| | ) | |
| **Defendant** | ) | |

### ANSWER AND COUNTERCLAIM

COMES NOW the Defendant, Charles B. Lovelady, M.D., by counsel, and for his Answer to the Complaint states as follows:

1.   Defendant admits the allegations of Paragraph 1 of the Complaint.

2.   Defendant admits the allegations of Paragraph 2 of the Complaint.

3.   Defendant states that Paragraph 3 of the Complaint is a conclusion of law as to which admission or denial is not required.

4.   Defendant states that Paragraph 4 of the Complaint is a conclusion of law as to which admission or denial is not required.

5.   Defendant states that, on or about May 14, 2008, he executed Exhibit A to the Complaint, the terms of which speak for themselves and are the best evidence of their content.  Defendant denies the allegations of Paragraph 5 of the Complaint to the extent inconsistent herewith.

6.   Defendant states that the terms of Exhibit A speak for themselves and are the best evidence of their content.  Defendant denies the allegations of Paragraph 6 of the

Complaint to the extent inconsistent herewith and denies the remaining allegations and conclusions of Paragraph 6 of the Complaint.

7.      Defendant states that the terms of Exhibit A speak for themselves and are the best evidence of their content. Defendant denies the allegations of Paragraph 7 of the Complaint to the extent inconsistent herewith and denies the remaining allegations and conclusions of Paragraph 6 of the Complaint.

8.      Defendant denies the allegations of Paragraph 8 of the Complaint and avers that on April 1, 2009, Defendant tendered to Defendant his written notice of termination of Exhibit A to the Complaint pursuant to Paragraph 10.4 thereof.

9.      Defendant denies the allegations of Paragraph 9 of the Complaint.

10.     Defendant denies the allegations of Paragraph 10 of the Complaint.

11.     Defendant admits to having received Exhibit B to the Complaint, but denies the allegations set forth therein and denies the remaining allegations of Paragraph 11 of the Complaint

12.     Defendant states that paragraph 12 of the Complaint is a conclusion of law as to which admission or denial is not required.

13.     Defendant incorporates by reference his answers to Paragraphs 1-12 of the Complaint.

14.     Defendant denies the allegations and conclusions of Paragraph 14 of the Complaint.

15.     Defendant incorporates by reference his answers to Paragraphs 1-14 of the Complaint.

16.     Defendant denies the allegations and conclusions of Paragraph 16 of the Complaint.

17.     Defendant denies the allegations and conclusions of Paragraph 17 of the Complaint.

18.     Defendant incorporates by reference his answers to Paragraphs 1-17 of the Complaint.

19.     Defendant denies the allegations of Paragraph 19 of the Complaint.

20.     Defendant states that the terms of Exhibit A to the Complaint speak for themselves and are the best evidence of their content and denies the allegations of Paragraph 20 of the Complaint to the extent inconsistent herewith.

With respect to the unnumbered paragraphs following Paragraph 20 of the Complaint, Defendant denies any factual allegations set forth therein and denies that Plaintiff is entitled to the relief prayed for or to any relief whatever.

## AFFIRMATIVE DEFENSES

**First Defense:**     To the extent that the Complaint demands equitable relief, it is barred by the doctrine of unclean hands.

**Second Defense:**     Plaintiff fraudulently induced Defendant to execute Exhibit A to the Complaint by misrepresenting that (a) Defendant would at all material times employee three (3) full time surgeons during Defendant's employment by Plaintiff and (b) that Plaintiff would negotiate and pay a buy out of Defendant's employment agreement with Hartselle (Alabama) Medial Center, and Defendant relied on these false representations to his detriment.

**Third Defense:**      Plaintiff rendered it impossible for Defendant to perform his obligations under Exhibit A by, among other things:

(a)      Failing or refusing to employ sufficient competent staff, including receptionists, nurses, nurse practitioners and surgeons;

(b)      Failing or refusing to adopt and enforce standards of performance by Defendant's supporting personnel in accordance with applicable law and with the current medical standards in the Franklin community;

(c)      Failing or refusing to provide and enforce effective protocols and standards for adequate surgical materials and packaging of such materials and instruments;

(d)      Failing or refusing to provide adequate direction and supervision to Defendant's supporting emergency room and operating room personnel;

(e)      Failing or refusing to comply with peer review recommendations out of fear of alienating Plaintiff's referring physicians in general;

(f)      Failing or refusing to require Defendant's supporting personnel to execute Defendant's written or oral orders relating to patient care or to execute same in a timely manner;

(g)      Failing or refusing to employ properly credentialed individuals or to provide incumbent employees with required credentials and/or privileges to perform certain basic procedures such as to perform central veinous access;

(h)      Failing or refusing to employ sufficient personnel to allow Defendant to comply with established regulatory guidelines mandating that physicians not be expected or required to perform more than ten (10) days "on call duty" per month.

(i)     Failing or refusing to compensate Defendant for on-call duties in excess of those required by Exhibit A to the Complaint;

(j)     Requiring Defendant to provide mentoring and proctoring services to another employee general surgeon to perform endoscopic and colonoscopic procedures, exposing Defendant to undue exposure to potential malpractice claims;

(k)     By the acts of its authorized agents and employees, otherwise failing or refusing to furnish to Defendant a working environment in which he could provide professional medical services and conduct his professional duties in accordance with applicable law and with the current medical standards in the community or otherwise fulfill his other obligations under Exhibit A to the Complaint.

## COUNTERCLAIM

1.     David W. Fuller ("Fuller") is, and at all times material hereto was the Chief Executive Officer of Franklin Clinic Corp. ("Franklin") which trades as Southampton Memorial Hospital.

2.     Franklin Clinic Corp. is affiliated with Community Health Systems, Inc. which owns or leases Southampton Memorial Hospital.

3.     Commencing in or about early 2008, Fuller began efforts to recruit Charles S. Lovelady, M.D. ("Lovelady") to leave his employment as a general surgeon with Hartselle Medical Center, another affiliate of Community Health Systems, Inc. and to go to work for Franklin.

4.     Fuller was aware that Lovelady was under contract to Hartselle Medical Center and that, if he left that employment, he would potentially incur a liability for early termination of his contract.

5.     As in inducement to Lovelady to enter into an employment agreement with Franklin, Fuller represented that Franklin would undertake to negotiate with Hartselle Medical Center and to pay Hartselle Medical Center on Lovelady's behalf the negotiated amount necessary to "buy out" Lovelady's contractual obligations.

6.     Lovelady relied on the representation made by Fuller as alleged in Paragraph 5 above in eventually accepting employment by Franklin and terminating his services under his contract with Hartselle Medical Center.

7.     Notwithstanding the representation made by Fuller as alleged in paragraph 5 above, Franklin failed to negotiate and pay to buy out Lovelady's contractual obligations with Hartselle Medical Center, as a result of which Lovelady has been required to pay Hartselle Medical Center not less than eighty thousand dollars ($80,000.00) and to incur litigation costs including attorneys' fees; and as a further result of which Lovelady has been required to relinquish to Hartselle Medical Center personal property and effects which he owned and which are worth an amount to be proved at trails, but not less than forty thousand dollars ($40,000.00).

8.     As an inducement to Lovelady to enter into the employment agreement with Franklin, Fuller represented that Franklin would, at all times during Lovelady's employment with Franklin, employ two (2) other general surgeons such that Lovelady would be required by his agreement with Franklin to work no more than ten (10) "on-call" days per month.

9.     Lovelady relied on the representation made by Fuller as alleged in paragraph 8 above in eventually accepting employment with Franklin.

10.     Notwithstanding the representation made by Fuller as alleged in paragraph 8 above, Franklin employed no more than one (1) other full time general surgeon throughout the duration of Lovelady's employment with Franklin, as a result of which Lovelady was routinely required to work no fewer than fifteen (15) on-call days per month, for which non-contractual services Franklin failed or refused to compensate him until on and after May 20, 2009, as a result of which Franklin deprived Lovelady of earned compensation in an amount to be proved a trial, but not less than fifty-five thousand dollars ($55,000.00).

11.     Throughout the course of Lovelady's employment with Franklin, by the acts and/or failures to act of Fuller and other of Franklin's agents and employees, Franklin rendered it impossible to provide professional medical services and conduct professional duties in accordance with applicable law and with the current medical standards in the community as follows:

(a)     Failed or refused to employ sufficient competent staff, including receptionists, nurses, nurse practitioners and surgeons;

(b)     Failed or refused to adopt and enforce standards of performance by Lovelady's supporting personnel in accordance with applicable law and with the current medical standards in the Franklin community;

(c)     Failed or refused to provide adequate and appropriate surgical materials and packaging of such materials and instruments;

(d)     Failed or refused to provide adequate direction and supervision to Defendant's supporting emergency room and operating room personnel;

(e)     Failed or refused to comply with peer review recommendations out of fear of alienating Franklin's referring physicians in general;

(f)     Failed or refused to execute Lovelady's written or oral orders relating to patient care or to execute same in a timely manner and failed or refused to require its employees and agents to do so;

(g)     Failed or refused to employ properly credentialed individuals or to provide incumbent employees with required credentials and/or privileges to perform certain basic procedures such as to perform central veinous access;

(h)     Failed or refused to employ sufficient personnel to allow Lovelady to comply with established regulatory guidelines mandating that physicians not be expected or required to perform more than ten (10) days "on call duty" per month.

(i)     Failing or refusing to compensate Lovelady for on-call and other non-contractual duties in excess of those required by Exhibit A to the Complaint;

(j)     Required Lovelady to provide mentoring and proctoring services to another employee general surgeon to perform endoscopic and colonoscopic procedures, exposing Defendant to undue exposure to potential malpractice claims;

(k)     By the acts of its authorized agents and employees, otherwise failing or refusing to furnish to Defendant a working environment in which he could provide professional medical services and conduct his professional duties in accordance with applicable law and with the current medical standards in the community or otherwise fulfill his other obligations under Exhibit A to the Complaint.

12.     On April 1, 2009, Lovelady exercised his privilege under Paragraph 10.4 of Exhibit A to the Complaint to give ninety (90) days written notice to terminate Exhibit

A, with or without cause; and, pursuant to such notice, Exhibit A was terminated effective June 29, 2009.

## COUNT 1

### FRAUD IN THE INDUCEMENT

13.     By the conduct alleged herein, Franklin fraudulently induced Lovelady to enter into Exhibit A to the Complaint.

14.     As a result of Franklin's fraudulent inducement and Lovelady's reasonable reliance thereon, Lovelady has been damaged in an amount to be proved a trial of this matter, but not less than three hundred fifty thousand dollars ($350,000.00).

## COUNT 2

### BREACH OF CONTRACT

15.     By the conduct alleged herein, Franklin breached its contractual obligations to Lovelady.

16.     As a result of Franklin's breach of contract, Lovelady has suffered loss of earnings and benefits, relocation and other expenses, loss of professional reputation and other damages in an amount to be proved a trial of this matter, but not less than three hundred fifty thousand dollars ($350,000.00).

WHEREFORE, Lovelady asks that the Court

(A)     Dismiss the Complaint against him, with prejudice;

(B)     Grant judgment in his favor and against Franklin in the amount of seven hundred thousand dollars ($700,000.00);

(C)    Award him his costs herein expended, including attorney's fees; and

(D)    Grant him such other and additional relief has it deems just and proper.

Respectfully submitted,

CHARLES B. LOVELADY, M.D.

By:    _____
                     Counsel

A. W. VanderMeer, Jr. (VSB No. 14214)
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
(757) 490-3000
(757) 497-1914 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this _30th_ day of June, 2010, I mailed a copy of the foregoing Answer and Counterclaim to:

B. Page Gravely, Jr., Esq.
Mary A. Huffman, Esq.
Emily M. Scott, Esq.
Hancock, Daniel, Johnson & Nagle, P.C.
P. O. Box 72050
Richmond, VA 23255-2050
*Attorney for Franklin Clinic Corp.*

_____
                Counsel

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE COUNTY OF FRANKLIN

| | | |
|---|---|---|
| **FRANKLIN CLINIC CORP.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Case No. CL10004652 |
| | ) | |
| **CHARLES B. LOVELADY, M.D.,** | ) | |
| | ) | |
| **Defendant** | ) | |

### ORDER

Upon joint motion of the parties hereto and deeming it just and proper to do so, it is hereby:

~~ORDERED, that Defendant shall have to and including July 1, 2010 within which~~ to file his pleadings in response to the Complaint, his Counterclaims, if any, and his Cross-Claims, if any.

_s/_____
                        Circuit Court Judge

Entered: _June 28, 2010_

We ask for this:

_____
Counsel for Plaintiff

_____
Counsel for Defendant



# COMMONWEALTH of VIRGINIA

POST OFFICE BOX 2452          *Secretary of the Commonwealth*          RICHMOND, VIRGINIA 23218-2452

## NOTICE OF SERVICE OF PROCESS

Charles B. Lovelady M.D.
102 Edwina Street
Evergreen, AL  36401

Franklin Clinic Corp

vs.

Charles B. Lovelady M.D.

**Summons and Complaint**

Dear Sir/Madam:

You are being served with the enclosed notice under section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process.

If you have any questions about this matter, PLEASE contact <u>the CLERK of the enclosed/below mentioned court</u> or any attorney of your choice.  <u>Our office does not accept payments on behalf of debts.</u>  The Secretary of the Commonwealth's ONLY responsibility is to mail the enclosed papers to you.

COURT:
County of Franklin
Franklin County Circuit Court
275 South Main St, Ste 212
Rocky Mount, VA 24151-1706
540-483-3065

Service of Process Clerk
Secretary of the Commonwealth's Office

**AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH**
Commonwealth of Virginia

Case No. .........................................................

IN THE FRANKLIN COUNTY ........................................................... Circuit Court

| FRANKLIN CLINIC CORP. | v. | CHARLES B. LOVELADY, M.D. |
|---|---|---|
| 100 Fairview Drive | | 102 Edwina Street |
| Franklin, Virginia 23851 | | Evergreen, Alabama 36401-3319 |

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

| Attachments: | ☒ Summons and Complaint | ☐ Notice |
|---|---|---|

I, the undersigned Affiant, state under oath that
☒ the above-named defendant ☐ ...............

whose last known address is ☒ same as above ☐ ............................................................

1. ☒ is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on reverse).

2. ☐ is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

[ ] is the hearing date and time on the attached process or notice.

_May 7, 2010_
DATE        _Emily M Scott_
☐ PARTY  ☒ PARTY'S ATTORNEY  ☐ PARTY'S AGENT  ☐ PARTY'S REGULAR AND *BONA FIDE* EMPLOYEE

State of _Virginia_        ☐ City ☒ County of _Henrico_

Acknowledged, subscribed and sworn to before me this day by _Emily M. Scott_
PRINT NAME OF SIGNATORY

_May 7, 2010_
DATE        _Kimberly Gilbert Beasley_
☐ CLERK  ☐ MAGISTRATE  ☒ NOTARY PUBLIC

Notary Registration # ..._114588_.....   My commission expires: _8/31/2013_

☒ Verification of the date of filing of the certificate of compliance is requested and a self-addressed stamped envelope is provided.

*[Notary stamp: Kimberly Gilbert Beasley NOTARY PUBLIC Commonwealth of Virginia Reg. 114588 My Commission Expires August 31, 2013]*

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.
SERVICE OF PROCESS IS EFFECTIVE ON THE DATE THAT THE CERTIFICATE OF COMPLIANCE IS FILED WITH THE ABOVE-NAMED COURT.

**CERTIFICATE OF COMPLIANCE**
I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:

1. On _MAY 2 0 2010_ ..............................., legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.

2. On _JUN 0 3 2010_ ............................., papers described in the Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

_663_
SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

FORM CC-1418 (MASTER, PAGE ONE OF TWO) 11/07
VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

## TIMELY SERVICE REQUIREMENT:

Service of process in actions brought on a warrant or motion for judgment pursuant to Virginia Code § 16.1-79 or § 16.1-81 shall be void and of no effect when such service of process is received by the Secretary within ten days of any return day set by the warrant. In such cases, the Secretary shall return the process or notice, the copy of the affidavit, and the prescribed fee to the plaintiff or his agent. A copy of the notice of the rejection shall be sent to the clerk of the court in which the action was filed.

## NON-RESIDENCE GROUNDS REQUIREMENT:
If box number 1 is checked, insert the appropriate subsection number:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or things in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

5. ~~Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such~~ person to use, consume, or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

6. Having an interest in, using, or possessing real property in this Commonwealth;

7. Contracting to insure any person, property, or risk located within the Commonwealth at the time of contracting; or

8. (ii). Having been ordered to pay spousal support or child support pursuant to an order entered by any court of competent jurisdiction in this Commonwealth having in personam jurisdiction over such person.

10. Having incurred a tangible personal property tax liability to any political subdivision of the Commonwealth.

## DUE DILIGENCE REQUIREMENT:

If box number 2 is checked, the following provision applies:

When the person to be served is a resident, the signature of an attorney, party or agent of the person seeking service on such affidavit shall constitute a certificate by him that process has been delivered to the sheriff or to a disinterested person as permitted by § 8.01-293 for execution and, if the sheriff or disinterested person was unable to execute such service, that the person seeking service has made a bona fide



**FRANKLIN COUNTY CIRCUIT COURT**
**Civil Division**
**275 S. MAIN STREET, SUITE 212**
**ROCKY MOUNT, VA 24151**


**Summons**


To:   CHARLES B LOVELADY MD                Case number: 067CL10004652-00
      102 EDWINA STREET
      EVERGREEN, ALABAMA 36401-3319




   The party upon whom this Summons and the attached Complaint are served is hereby
   notified that unless within 21 days after such service, response is made by filing
   in the clerk's office of this court a pleading in writing, in proper legal form,
   the allegations and charges may be taken as admitted and the court may enter an
   order, judgment, or decree against such party either by default or after hearing
   evidence.

Appearance in person is not required by this Subpoena.

Done in the name of the Commonwealth of Virginia on, Thursday, May 13, 2010.



Clerk of Court: TERESA J. BROWN

                              By:  _____
                                      (Clerk/Deputy Clerk)


   Instructions:


Attorney's name:  EMILY M SCOTT
                  P O BOX 72050
                  RICHMOND, VA 23255-2050
                  (804) 967-9604

**VIRGINIA:**

## IN THE FRANKLIN COUNTY CIRCUIT COURT

| | |
|---|---|
| **FRANKLIN CLINIC CORP.,** | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) **Case No.** *CL10004652* |
| | ) |
| **CHARLES B. LOVELADY, M.D.,** | ) |
| | ) |
| Serve: **Secretary of the Commonwealth of Virginia** | ) |
| **Office of the Secretary of the Commonwealth** | ) |
| **1111 E. Broad Street, 4th Floor** | ) |
| **Richmond, Virginia  23219** | ) |
| | ) |
| *Defendant.* | ) |

### COMPLAINT

Plaintiff Franklin Clinic Corp. ("Plaintiff"), by counsel, states as follows for its Complaint against Defendant Charles B. Lovelady, M.D. ("Dr. Lovelady" and/or "Defendant").

### The Parties

1.    Plaintiff Franklin Clinic Corp. is a corporation doing business in the Commonwealth of Virginia with a principal office located at 100 Fairview Drive, Franklin, Virginia 23851.

2.    Upon information and belief, Defendant Charles B. Lovelady, M.D. is an individual residing in Alabama.

### Jurisdiction and Venue

3.    This Court has jurisdiction over Plaintiff's claims pursuant to Virginia Code § 8.01-328.1.

4.     Venue is proper in this Court pursuant to Virginia Code § 8.01-262 (3 and 4).

**The Physician Agreement**

5.     On or about April 24, 2008, Dr. Lovelady and Plaintiff entered into a Physician Employment Agreement ("the Agreement"), attached as <u>Exhibit A</u>.  As part of the Agreement, Dr. Lovelady agreed to provide professional medical and surgical services on an exclusive, full-time basis ("the Obligations") at Southampton Memorial Hospital ("the Hospital") for a period of three (3) years, beginning on or before August 1, 2008 ("Term of the Agreement").  *See* Exhibit A at §§ 2, 3.1 and 5.1. Further, during the Term of the Agreement, Dr. Lovelady agreed, among other things, to obtain and maintain membership in good standing on the active medical staff of the Hospital. *See* Exhibit A at § 5.1(k).

6.     As consideration for Dr. Lovelady's performance under the Agreement, including, but not limited to, his fulfillment of the Obligations, Plaintiff advanced Dr. Lovelady Fifty Thousand and No/100 Dollars ($50,000.00) as a commencement bonus ("Commencement Bonus"), Four Thousand Eight Hundred Fifty-Six and 59/100 Dollars ($4,856.59) for continuing medical education expenses ("CME Expenses"), and Fifteen Thousand and No/100 Dollars ($15,000.00) for relocation expenses ("Relocation Expenses"). *See* Exhibit A at pp. 1, 13, and 14.

7.     The Agreement further provides that if Dr. Lovelady ceased providing full-time medical services in the Community on behalf of Plaintiff at anytime during the Term of the Agreement, he agreed to repay the amounts of the Commencement Bonus, CME Expenses, and Relocation Expenses less a prorated amount calculated by the number of months Dr. Lovelady complied with the Agreement. *See* Exhibit A.

## Background and Facts

8.     On or about June 24, 2009, Dr. Lovelady failed to comply with the Obligations. Specifically, Dr. Lovelady failed to, among other things, (a) render professional medical and surgical services on behalf of Plaintiff; (b) maintain a full-time practice of medicine in the Community on behalf of Plaintiff; and (c) provide on-call coverage for patients of the Hospital. *See* Exhibit A at § 5.1.

9.     Pursuant to the formulae set forth in the Agreement relating to forgiveness of the Commencement Bonus, CME Expenses, and Relocation Expenses, Dr. Lovelady owes the Plaintiff Twenty Four Thousand Eight Hundred Eight Two and 17/100 Dollars ($24,882.17) ("Amount Owed").

10.     The Amount Owed is calculated as follows:

```
$ 50,000.00.... Commencement Bonus
$  4,856.59.... Continuing Medical Education Expenses
$ 15,000.00.... Relocation Expenses
---------------
$ 69,856.59    Amount advanced to Dr. Lovelady
($ 15,000.01).. Less forgiveness of Commencement Bonus
        ......... (10 and 25/31 months x $ 1,388.98)
($  4,370.98).. Less forgiveness of Continuing Medical Education Expenses
        ......... (10 and 25/31 months x $404.72)
($ 13,500.00).. Less forgiveness of Relocation Expenses
        ......... (10 and 25/31 months x $ 1,250.00)
($  4,600.00).. Less compensation for on-call services in June 2009
($  7,503.43).. Less amount of payroll check not collected
---------------
$ 24,882.17.... Amount Owed
```

11.     Due to Dr. Lovelady's failure to comply with the Obligations, Plaintiff made written demands for Dr. Lovelady to pay the Amount Owed.  A true, correct and authentic copy of the demand letters sent by Plaintiff to Dr. Lovelady is attached hereto as Exhibit B.  Despite

Plaintiff having made written demands for repayment, Dr. Lovelady refuses to repay the Amount Owed.

12.     All conditions precedent have been performed or have occurred.

## COUNT I – BREACH OF CONTRACT

13.     Plaintiff incorporates by reference Paragraphs 1 through 12 above, as if fully set forth herein.

14.     As set forth in the preceding paragraphs, Plaintiff and Dr. Lovelady entered into the Agreement.  Plaintiff fully performed its contractual obligations under the Agreement.  Dr. Lovelady, however, materially breached his contractual obligations to Plaintiff by failing to comply with the Obligations and failing to repay Plaintiff the Amount Owed under the Agreement.  Plaintiff has been damaged as a result of Dr. Lovelady's breach.  Accordingly, Plaintiff is entitled to recover from Dr. Lovelady all amounts due and owing pursuant to the Agreement.

## COUNT II – UNJUST ENRICHMENT

15.     Plaintiff incorporates by reference Paragraphs 1 through 14 above, as if fully set forth herein.

16.     In the alternative, Plaintiff is entitled to recover from Dr. Lovelady under the theory of unjust enrichment.  As set forth in the preceding paragraphs, Plaintiff conferred a benefit upon Dr. Lovelady by advancing him $69,856.59 in Commencement Bonus, CME Expenses, and Relocation Expenses.  Dr. Lovelady accepted, retained and appreciated such benefit.  Dr. Lovelady would be unjustly enriched if he was allowed to keep the unforgiven portion of this amount and was not required to pay it back to Plaintiff.  As a result of Dr.

Lovelady's unjust enrichment, Plaintiff has suffered actual damages.  Plaintiff seeks to recover the amount owed to Plaintiff as it in equity and good conscience belongs to Plaintiff.

17.   As a direct result of Dr. Lovelady's conduct, Plaintiff has been damaged in an amount to be proven at trial, but no less than $24,882.17.

## COUNT III – ATTORNEYS' FEES AND COSTS

18.   Plaintiff incorporates by reference Paragraphs 1 through 17 above, as if fully set forth herein.

19.   Dr. Lovelady's breach of the Agreement forced Plaintiff to retain counsel to prosecute this action.

20.   The Agreement stipulates that Plaintiff is "entitled to recover the costs of such action so incurred, including, without limitation, reasonable attorney's fees and applicable court costs." *See* Exhibit A at § 20.

WHEREFORE, Plaintiff respectfully requests this Court enter an award against Defendant Charles B. Lovelady, M.D. in a total amount believed to be $24,882.17, for outstanding amounts paid or advanced to Dr. Lovelady pursuant to the Agreement, including the unamortized portion of the Commencement Bonus, Continuing Medical Education Expenses, and Relocation Expenses, plus interest, attorneys' fees, costs, liquidated damages, consequential damages, and such other relief as the court may deem appropriate.

WHEREFORE, Plaintiff respectfully requests this Court to award liquidated damages against Defendant Charles B. Lovelady, M.D. in an amount to be proven at trial, but no less than $300,000.00.  *See* Exhibit A at § 17.

WHEREFORE, Plaintiff is entitled to pre-judgment and post-judgment interest on the

Amount Owed by Defendant Charles B. Lovelady, M.D. under the Agreement pursuant to

Virginia Code § 8.01-382.

**FRANKLIN CLINIC CORP.**

By _____
                    Counsel

B. Page Gravely, Jr., Esq. (VSB No. 32688)
Mary A. Huffman, Esq. (VSB No. 50908)
Emily M. Scott, Esq. (VSB No. 71435)
HANCOCK, DANIEL, JOHNSON & NAGLE, P.C.
Post Office Box 72050
Richmond, VA 23255-2050
Telephone: (804) 967-9604
Facsimile: (804) 967-2411
*Counsel for Plaintiff*

00031.0006/260517v2

6



EXHIBIT
A

# PHYSICIAN EMPLOYMENT AGREEMENT

Date of Agreement: April 24, 2008                  Physician Name: Charles B. Lovelady, MD

Employer Name: Franklin Clinic Corp.             Telephone Number: 256-338-6957

Address of Employer:                             Address of Physician at Date of Agreement:

    100 Fairview Drive                          200 County Road, 829

    Franklin, VA 23851                          Cullman, AL 35058

Practice Commencement Date: On or before August 1, 2008

Hospital: Southampton Memorial Hospital          Specialty: General Surgery

Community: Franklin, Virginia                    State(s) of Licensure: AL & VA (Pending)

Term of the Agreement: Three (3) Years           CME Amount: $ 2,500.00

Base Salary Year: $ 300,000.00                   Marketing Expenses: Up to $ 10,000.00

Incentive Compensation: Ninety-three percent (93%) of the difference between Physician's net   revenue minus total operating expenses

Commencement Bonus: $ ~~25,000.00~~ $ 50,000 - *[handwritten]*

Relocation Expense Amount: Up to $ 15,000.00 upon submission of relocation receipts and in accordance with Employer's relocation policies

The attached Standard Terms and Conditions are incorporated into the Physician Employment Agreement.

**SIGNATURES AND APPROVALS:**
(see Section 21 of the Standard Terms and Conditions)

Physician: *Charles B. Lovelady MD*
           Charles B. Lovelady, MD

Date: *5·14·08*

Employer: Franklin Clinic Corp.

*David W. Fuller*
David Fuller, Hospital CEO

Date: *5-19-08*

Approved as to Form:

*[signature]*
In-House Legal Counsel

Date: *9/9/08*

Reviewed and Approved:

*[signature]*
David Miller, Division President of Community Health Systems Professional Services Corporation, Employer's Management Company

Date: *7-10-08*

## PHYSICIAN EMPLOYMENT AGREEMENT

### STANDARD TERMS AND CONDITIONS

THIS PHYSICIAN EMPLOYMENT AGREEMENT (the "Agreement") is made and entered into by and between the Employer and Physician indicated on the attached cover page in order to provide professional medical services to Employer in Physician's Specialty.  The capitalized Terms in the Physician Employment Agreement Standard Terms and Conditions not otherwise defined shall have the definition of such terms as set forth in the attached cover page.

In consideration of the mutual promises set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Recitals.

Physician is duly licensed and authorized to practice medicine under the laws of the state in which Employer is located or will be so licensed by the Practice Commencement Date.  Physician will have medical staff privileges at the Hospital affiliated with Employer and indicated on the coversheet (the "Hospital") by the Practice Commencement Date.  Employer desires to employ Physician on a full-time, exclusive basis, to render professional services on behalf of Employer at one or more locations (the "Medical Office(s)") and Physician desires to be so employed.

2.    Establishment of Professional Relationship.

Employer hereby employs Physician, and Physician hereby accepts and agrees to such employment pursuant to all of the terms and conditions of this Agreement.  During the term of this Agreement, Physician shall render professional medical services and such reasonable administrative and management services as may be delegated to Physician by Employer on a full-time, exclusive basis, in accordance with all of the terms and conditions of this Agreement. Physician hereby agrees to devote full time and attention, with Physician's best endeavors and skill for the interest, benefit and best advantage of Employer. All earnings derived from or related to the performance by Physician of Professional Medical Services ("Professional Medical Services" are defined as the services personally rendered by Physician to or for patients and other services such as teaching, writing, etc., on behalf of Employer) shall accrue to and be the property of Employer.

3.    Term.

3.1    The term of this Agreement shall commence on the Practice Commencement Date, and shall continue in full force and effect thereafter for the Term of the Agreement (except as otherwise indicated, the Term of the Agreement and any extension thereof shall hereinafter be referred to as the "Term").  However, that in the event of adoption of legislation, regulations, or instructions or the initiation of an enforcement action by a governmental agency, any of which materially affects the legality of this Agreement or the relationship among the parties hereto, either party may propose amendments to the Agreement to bring the Agreement into conformity with such laws. If Employer and Physician are unable to reach agreement on the renegotiation of the Agreement within thirty (30) days of the initiation of negotiations, then either party may terminate this Agreement upon written notice to the other party.

3.2    Prior to the Practice Commencement Date, Physician agrees to submit to a pre-employment drug screening. Physician acknowledges and agrees that Physician's employment under this Agreement is conditioned upon Physician's passing such pre-employment drug screening.

2

4.    Representations and Warranties of Physician.

Employer has entered into this Agreement in reliance on Physician's representations and warranties to Employer being true and accurate at the time Physician entered into this Agreement and at all times during the Term as follows:

(a)    Physician shall be duly licensed and authorized to practice medicine under the laws of the state in which Employer is located;

(b)    Physician shall have all necessary narcotics and controlled substances registration numbers and licenses required for the performance of the duties hereunder;

(c)    Physician has never been reprimanded, sanctioned, or disciplined by any licensing board or state or medical society or specialty board or any healthcare facility;

(d)    Physician's license to practice medicine has never been suspended, curtailed, denied or revoked by any state licensing board;

(e)    Physician has never been denied membership or reappointment of membership on the medical staff of any hospital, and no hospital medical staff membership or clinical privileges of Physician have ever been suspended, curtailed, denied or revoked;an d

(f)    Physician is not subject to any disciplinary order, sanction or decree of any federal or state governmental agency having jurisdiction over the practice of medicine.

5.    Duties and Covenants of Physician.

5.1    Physician's duties shall include, but not be limited to, the following:

(a)    providing professional medical and surgical services on an exclusive, full-time basis to all patients in Medical Office and Hospital who are scheduled for appointments and surgical procedures with Physician. Physician shall be available for office visits during normal business hours, which shall be determined by Employer in consultation with Physician.  The hours of operation of the Medical Office may be changed by Employer after consultation with Physician.  Physician shall conduct hospital rounds as reasonably required by Employer and according to standard of care. For purposes of this Agreement, "full-time" shall mean the devotion by Physician of a minimum average of forty (40) hours per week to the provision of direct patient contact hours on behalf of Employer;

(b)    providing on-call coverage for patients of the Hospital (i.e. Emergency Room Call) after regular business hours in coordination with other physicians on the Hospital's Medical Staff, in accordance with a schedule established by Hospital in consultation with Physician, and providing on-call coverage after regular business hours for patients of Physician or other physicians practicing in the same Medical Office in coordination with such other physicians, in accordance with a schedule established by Physician in consultation with Employer and such other physicians;

(c)    responsibility of keeping and maintaining on a timely basis accurate records (including without limitation both office and hospital patient charts), through procedures determined by Employer, relating to all professional medical services rendered by Physician under this Agreement in accordance with all applicable record keeping and reporting requirements, and affixing an appropriate diagnosis on all patient

3

records (all of which records shall be and remain the property and in the possession of the Employer);

(d)     providing professional medical services and conducting professional duties in accordance with applicable law and with the current medical standards in the community;

(e)     observing and complying with all reasonable rules and regulations of Employer or Hospital now in force or as may hereafter be adopted from time to time by Employer or Hospital;

(f)     complying with any quality assurance or improvement program established by Employer;

(g)     supervising and training any nurse practitioners, or physician assistants assigned to Physician by Employer;

(h)     complying with the policies and procedures established by Employer, as they may change from time to time;

(i)     adhering to all Employer's policies and procedures regarding the selection and use of contracted supplies and equipment utilized in the Employer's facilities;

(j)     submitting to periodic, random drug testing in accordance with the policies and procedures as may be established by Employer.;

(k)     maintaining membership in good standing on the Active medical staff of the Hospital;

(l)     all other reasonable administrative duties as requested by Employer;

(m)     Physician shall participate in Employer's regular assessments of Physician's documentation and coding, and Physician shall participate, when requested, in all related educational programs. At all times, during the term of this Agreement, Physician shall comply with Employer's policies and procedures to meet state and federal guidelines regarding documentation, coding, and billing. Failure to comply with such policies and procedures shall be deemed to be a material breach of this Agreement.

Physicians are selected annually for documentation and coding compliance audits. If the Physician is audited, but does not pass the audit, pre-billing reviews will be instituted until such time that the Physician passes a subsequent audit as determined by the sole discretion of the Employer.

(n)     Physician shall be responsible for building patient volumes of Physician's practice, and shall cooperate with Employer to implement and develop marketing programs and services to increase the number of new patients to the practice, and the number of patient visits.

Employer and Physician acknowledge that no part of the compensation to be paid to Physician hereunder constitutes compensation for the referral of patients for any service or good of Employer or Hospital.

5.2     Physician acknowledges that Employer is entering into this Agreement to ensure that sufficient physician services are available to serve the Community and at the Hospital, and the resources of the Hospital are efficiently utilized. As a result, though Physician may obtain and exercise

privileges at other facilities, with respect to patients seen by Physician in the scope of employment hereunder, Physician shall admit to and/or schedule facility procedures at Hospital, except when the patient expresses a contrary preference, the patient's insurer dictates otherwise, or, in the Physician's judgment, the referral is not in the patient's best medical interest.

6.       Office Space and Personnel.

6.1      Employer shall furnish to Physician the following as may be reasonably necessary, as determined by Employer, for the performance of Physician's professional medical services at the Medical Office including, but not limited to, (i) adequate office space, (ii) equipment and furniture, (iii) utilities and supplies, and (iv) support personnel.

6.2      Physician shall use the Medical Office only for the purpose of performing services pursuant to this Agreement. Nothing in this Agreement shall be construed by either party to constitute a lease to Physician of the Medical Office.  Employer shall at all times have free and full access to the Medical Office.

6.3      Employer may require Physician to practice medicine in other medical offices which the Employer or Hospital owns, operates or manages or which Employer or Hospital shall establish from time to time, located in Hospital's service area or in the Community.  Physician hereby agrees to practice in such other medical offices during the term of this Agreement upon the reasonable request of Employer.

6.4      Employer shall be responsible for the scheduling of Physician's patients.

7.       Professional Billing and Collection; Other Activities.

7.1      Employer shall bill, collect and retain all professional fees for professional medical services rendered by Physician under this Agreement, whether such professional medical services are provided to patients in the Medical Office, in the Hospital or at any other location (the "Professional Fees").  Employer shall determine in its sole discretion the amounts of the Professional Fees to be charged to patients for Physician's professional medical services.  Employer or an agent of Employer shall collect all of the Professional Fees. In the event Physician receives any Professional Fees directly, Physician shall promptly deliver such Professional Fees to Employer.

7.2      To the extent asked to do so by Employer, Physician shall maintain complete and accurate records of the time Physician spends providing services under this Agreement in accordance with standard Employer procedures for the maintenance of such records.

7.3      Employer shall engage in marketing activities designed to promote Physician's practice, including but not limited to, developing and implementing a marketing plan in consultation with Physician. Physician shall cooperate with Employer in connection with such activities.

7.4      Physician shall comply with those provisions of the law which affect Employer's and Hospital's reimbursement.  Physician shall do nothing which will adversely affect such reimbursement or Employer's and Hospital's provider status with any third party payer.

7.5      Physician hereby reassigns to Employer any rights Physician may have to payments made by Medicare for services rendered by Physician.

7.6      Physician recognizes that Employer will from time to time execute, on behalf of Physician, agreements with various health care payers, such as HMO's, managed care plans, networks, IPA's, PHO's, insurance companies, self-funded plans, government reimbursement plans and similar organizations.  Physician hereby (i) agrees to execute any such agreements that Employer requests Physician to execute, (ii) agrees not to execute any such agreements unless requested to do so by

5

Employer, and (iii) grants to Employer a limited power of attorney for the purpose of executing such agreements on behalf of Physician.

8.    **Compensation and Benefits.**

8.1    As compensation for all services rendered during the term of this Agreement, Employer shall pay to the Physician the following:

(a)    For the Term of the Agreement, Physician shall receive as annual compensation the Base Salary which shall be payable in accordance with Employer's normal payroll policies, subject to customary withholding of taxes, FICA contribution, etc.

(b)    For the Term of the Agreement, in order to provide additional incentive to Physician to provide professional services in a prompt and efficient manner, Physician shall have the opportunity each year to earn incentive compensation ("Incentive Compensation") in addition to Physician's base salary. The exact dollar amount of the incentive shall be calculated as Ninety-three percent (93%) of the difference between net revenues from professional services personally provided by Physician minus Physician's total operating expenses. The Incentive compensation shall be payable in accordance with Employer's normal payroll policies, subject to customary withholding of taxes, FICA contribution, etc.

(c)    No ancillary charges shall be included in any calculations. Physician's compensation is based without reliance on non-professional (technical) fees generated for any ancillary services (e.g., laboratory, radiology, or diagnostic testing) whether provided at the Physician's practice location or elsewhere.

8.2    Physician shall be allowed to participate in the employee welfare and pension benefit plans, and to receive the vacation and fringe benefits, described in the attached Exhibit A, provided that such benefits may change from time to time, in Employer's sole discretion, with or without advance notice. Some benefits provided pursuant to this Agreement may be subject to Federal Income Tax withholding, Social Security, Medicare, and State Income Tax Withholding at the time of payment. The payment and related taxes shall be reported on Physician's W-2 in the year payment is made.

8.3    Physician and Employer acknowledge that all of the compensation payable under this Agreement shall constitute compensation for rendering professional medical services, and that no portion of the compensation payable hereunder constitutes remuneration in return for the referral of patients or the ordering of tests or supplies.

8.4    Physician shall have submitted all necessary paperwork to PPSI Provider Enrollment or Hospital to complete required provider enrollment applications necessary to bill and collect for services rendered prior to Physician's Practice Commencement Date.

9.    **Insurance.**

9.1    Employer shall either procure and maintain professional malpractice liability insurance on a claims made basis in the amount of $1,000,000 per occurrence/$3,000,000 in the aggregate or an amount necessary to meet specific state requirements, covering Physician for professional medical services provided pursuant to this Agreement or shall assume responsibility for Physician's existing malpractice liability insurance premiums. Employer shall be a named insured on such policy. Such policy shall, for the first year of the term of this Agreement, be a "first year" claims made policy; for the second year of the term of this Agreement, be a "second year" claims made policy, and so on. Upon the expiration or termination of this Agreement, if required, Employer shall purchase for Physician an extended reporting endorsement (commonly known as "tail" coverage) for the policy purchased pursuant to this Section, or in the alternative, Employer will fully indemnify and defend Physician against any professional liability claims, falling within the scope of the duties of this Agreement

6

and with a date of occurrence within the Term of this Agreement up to the policy limits described above. If, with prior written approval of Employer, Physician conducts professional activities outside the scope of this Agreement, Physician shall maintain, at Physician's expense, professional malpractice liability insurance for such activities. If, upon the commencement of the Term, Physician has been insured under a claims made policy, Physician must purchase, at Physician's expense, an extended reporting endorsement covering any occurrences prior to Physician's employment. Nothing in this Section shall prohibit Physician from purchasing additional insurance at Physician's expense.

9.2     Should Employer terminate the Agreement due to an uncured, material breach of the Agreement by Physician, Physician will be responsible for purchasing the extended reporting endorsement (commonly known as "tail coverage") for the policy purchased pursuant to Section 9.1 above. Physician shall provide Employer with proof that such coverage is in current effect and is deemed acceptable by Employer.

10.     Termination.

10.1     This Agreement may be terminated immediately by Employer upon the occurrence of any of the following events:

(a)     the loss or suspension (whether temporary or permanent) of Physician's license to practice medicine, or if placed on probation, under the laws of the state in which Employer is located;

(b)     the resignation, expulsion, or suspension of Physician from the Medical Staff or the limitation or termination of clinical privileges at the Hospital;

(c)     the loss, or inability to obtain, malpractice insurance at a reasonable cost, as determined by Employer, in accordance with Section 9.1 above;

(d)     Physician's death or permanent disability as defined in accordance with Employer's disability policy;

(e)     the cessation of operations of the Hospital;

(f)     the bankruptcy, insolvency or receivership of Employer;

(g)     Physician's breach of any representation or warranty set forth in Section 4 of this Agreement or upon any such representation or warranty becoming untrue;

(h)     Physician's failure to maintain Hospital and ambulatory medical records on a timely professional basis as established by Employer and/or Hospital medical staff by-laws;

(i)     Employer's determination that Physician's continued employment would pose an unreasonable risk of harm to patients or others or would adversely affect the confidence of the public in the services provided by Employer or Hospital;

(j)     Employer's determination that Physician has engaged in gross insubordination or gross dereliction of duty;

(k)     Physician's failure to pass pre-employment drug screening described in Section 3 of this Agreement or upon Physician's failure to pass any periodic, random drug test described in Section 5.1(j) of this Agreement;

(l)     conduct by the Physician which is reasonably considered by the Employer to be unethical, unprofessional, fraudulent, unlawful, or adverse to the interest,

reputation or business of the Employer or Hospital, and/or Physician's conviction of a felony;

(m)      notice that Physician has been suspended, excluded, debarred from any federal government payer program; or

(n)      notice that Physician has violated any of the Terms and Conditions in Section 15.2 below.

10.2    In addition to the termination provisions listed above, if either party materially breaches any provision in this Agreement, and fails to cure such material breach within thirty (30) days following delivery to such party of a written notice of the alleged material breach, then the other party thereafter may immediately terminate this Agreement upon written notice to the breaching party.

10.3    The termination provisions in this Section 10 shall not be exclusive, but rather shall be in addition to any other rights and remedies that the parties may have at law or in equity. Termination of this Agreement shall not release or discharge either party from any obligation, debt or liability which shall have previously accrued and remains to be performed on or after the date of termination.

10.4    This Agreement may be terminated by either party with or without cause upon ninety (90) days written notice.

11.    Patient Care.

Nothing in this Agreement shall be interpreted to dictate Physician's practice of medicine, Physician's delivery of direct patient care, or Physician's independent judgment in the practice of medicine. Physician shall have complete control over the diagnosis and treatment of patients assigned to Physician and the performance of professional medical services. Neither the board of directors of Employer or Hospital nor any non-physician employee of Employer or Hospital shall exercise any direct supervision or control over the individual treatment of patients by Physician.

12.    Rights and Obligations Upon Termination.

Upon the termination of this Agreement for any reason, all patient records located at the Medical Office shall remain the exclusive property of Employer; provided, however, that Physician shall have the continuing right to inspect all records pertaining to a particular patient in the event a malpractice claim is asserted against Physician as a result of medical activities conducted by Physician.

13.    Assignment.

Except as otherwise noted in this Agreement, Physician shall not assign any of Physician's rights or delegate any of Physician's duties under this Agreement without the prior written consent of Employer, which consent may be withheld in Employer's sole discretion. Any unauthorized attempted assignment by Physician shall be null and void and of no force or effect. This Agreement is assignable by Employer, without consent, to any successor company by merger or sale of assets, or to any parent, subsidiary or affiliated company of Employer.

14.    Noncompetition.

14.1    As a material inducement for Employer to enter into this Agreement, Physician agrees that during the Term and for a period of two (2) years following the termination, expiration or nonrenewal of this Agreement, or upon a determination that this Agreement is otherwise unenforceable, Physician shall not, without the prior written consent of Employer, either (i) engage in the practice of medicine or surgery within the Restricted Areas (as defined below) for Physician or on behalf of any person or entity other than Employer or (ii) have any sort of ownership, debt, or contractual relationship

8

directly or indirectly with an entity which owns or operates a health care provider doing business in competition with Hospital or Employer in the Restricted Area. The term "Restricted Areas" shall mean the area within a twenty (20) mile radius of the Medical Office and the area within a twenty (20) mile radius of the Hospital. Nothing in this Section shall prohibit Physician from owning shares of stock in a publicly traded company.

14.2    If the scope of any restrictions contained in Section 14.1 hereof are too broad to permit enforcement of such restrictions to their full extent, then such restrictions shall be enforced to the maximum extent permitted by law, and the Physician hereby consents and agrees that such scope may be modified accordingly in any proceeding brought to enforce such restrictions.

14.3    In the event that Physician terminates this Agreement pursuant to Section 10.2 hereof as a result of an uncured default by Employer, then Physician shall not be bound by the terms of this Section 14 and Section 16 following such termination.

15.    Confidential Information.

15.1    During the term of this Agreement, Physician may have access to and become acquainted with certain confidential information, consisting of business accounts, confidential financial information, clinical protocols developed by Employer or Hospital, and other records of Employer or Hospital (some of which may be developed in part by Physician under this Agreement), which items are owned exclusively by Employer or Hospital, as the case may be, and used in the operation of their businesses (the "Confidential Information"). Physician acknowledges that the Confidential Information is secret, confidential and proprietary to Employer and Hospital and have been disclosed to and/or obtained by Physician in confidence and trust for the sole purpose of using the same for the sole benefit of Employer and Hospital. During and after the Term of this Agreement, except as required by law, Physician shall not divulge any of the Confidential Information to any other person or entity other than legal counsel, or accountant, or use the Confidential Information for Physician's own benefit or for the benefit of any other person or entity, without the prior written consent of Employer or Hospital, which consent may be withheld in its sole discretion. Physician and Employer agree that this Agreement and all of its terms constitute Confidential Information; provided, however, that the fact that Physician is an employee of Employer and the fact that Physician has executed this Agreement shall not constitute Confidential Information.

15.2    During the Term of this Agreement, Physician shall adhere to the following compliance regulations:

(a)    Physician will not use or further disclose patient information other than as permitted or required by this Agreement and by applicable federal and state laws;

(b)    Physician will use appropriate safeguards to prevent the use or disclosure of information other than as provided for in this Agreement;

(c)    Physician agrees that upon termination of this Agreement, Physician will return all patient information received from Employer in any form and retain no copies of such information; and

(d)    Physician agrees that this Agreement will be terminated if any violation of this section occurs.

16.    Nonsolicitation.

16.1    Physician shall not, for a period of one (1) year immediately following the expiration or earlier termination of this Agreement, directly or indirectly, call on, solicit, employ, contract with or take away, or attempt to call on, solicit, employ, contract with or take away, without Employer's

9

prior written consent, any person who is, during the Term of this Agreement, or who was at the time of expiration or termination of this Agreement, an employee of, or under contract with, Employer or Hospital.

       16.2    Physician shall not, for a period of one (1) year immediately following the expiration or earlier termination of the Agreement, directly or indirectly, call on, solicit, take away, or attempt to call on, solicit, take away, without Employer's prior written consent, any person who is, during the Term of this Agreement, or who was at the time of expiration or termination of this Agreement, a patient of Employer.

**17.    Liquidated Damages.**

       In the event this Agreement is terminated prior to its expiration due to any breach by Physician or due to Physician's violation of the provisions of Section 14.1, Section 15 or Section 16, the parties agree that Employer will suffer damages which are not calculable and that Physician shall pay Employer, as liquidated damages and not as a penalty, an amount equal to 1(x) Physician's salary and all related recruitment and start up costs. The remedy provided for in this Section shall be in addition to any other remedy available at law or in equity.

**18.    Notices.**

       Any notice or other communication required or permitted by this Agreement shall be in writing and shall be effective upon hand delivery, deposit with a reputable overnight courier such as Federal Express for overnight delivery, or deposit with certified or registered mail, postage prepaid, return receipt requested, and addressed as to Employer at Employer's address with a copy to Employer's Legal Counsel at Attn: Legal Department, 4000 Meridian Blvd., Franklin, TN 37067, OR Attn: Legal Department, PO Box 689020, Franklin, TN 37068, or to Physician at Physician's last business address while employed by Employer.

**19.    Physician Start up Checklist.**

       Attached to this Agreement is the New Physician Start up Checklist (Exhibit B).  It is the responsibility of the Parties to complete this checklist and submit the most current version to the Employer's Director of Physician Practice Support by the tenth (10th) of each month beginning once the Parties sign the Employment Agreement and continuing until the checklist has been completed in its entirety.  Physician will assist Employer in completing the checklist.

**20.    Miscellaneous.**

       This Agreement shall be governed by and interpreted under the laws of state in which Employer is located.  Venue for any action concerning this Agreement between the parties hereto shall be in the county in which the Employer is located.  In the event that such action is brought in or removed to a federal court and no federal court of competent jurisdiction is located within such county, venue for such action shall lie in the nearest county in which a federal court of competent jurisdiction is located.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and no amendment, alteration or modification of this Agreement shall be valid unless in each instance such amendment, alteration or modification is expressed in a written instrument duly executed in the name of the party or parties making such amendment, alteration or modification.  The headings set forth herein are for the purpose of convenient reference only, and shall have no bearing whatsoever on the interpretation of this Agreement.  Any waiver of any provision hereof shall not be effective unless expressly made in writing executed by the party to be charged.  The failure of any party to insist on performance of any of the terms or conditions of this Agreement shall not be construed as a waiver or relinquishment of any rights granted hereunder or of the future performance of any such term, covenant or condition, and the obligations of the parties with respect thereto shall continue in full force and effect.  In the event that either party resorts to legal action to enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to recover the costs of such action so incurred, including, without limitation, reasonable attorney's fees and applicable court costs.

10

21.     <u>Required Approvals</u>.

This Agreement, nor any amendment or modification hereto, shall not be effective or legally binding on the Employer or the Physician until Physician has successfully completed Hospital credentialing procedures, which include a criminal and credit check review, and until the Agreement has been reviewed and approved in writing by a Division President of Community Health Systems Professional Services Corporation, the Employer's Management Company, and Employer's Corporate Counsel.   In addition, Physician understands and agrees that Employer may, in its sole discretion, terminate this offer of employment if Employer believes that the information obtained from any and all reference, credit, and/or criminal background checks are unacceptable or undesirable.

22.     Physician agrees that any amounts due to Physician by Employer may be reduced by any and all monies due and owing by Physician to Employer, under this Agreement or any other agreement between the parties, to the extent allowed by law.

11

**EXHIBIT A**
**SUMMARY OF**
**Employed Physician Benefits**

*The following summary provides a brief description of certain employee welfare and pension benefits currently provided to employed physicians, all of which are subject to change on a periodic basis. The Employer has reserved the right to amend and/or terminate all such benefits. As such, this summary is not intended to guarantee any particular benefits during the term of this contract. The applicable benefit summary and/or summary plan description for each benefit plan of the Employer will govern any benefits which are provided under each such plan.*

**VACATION**
Vacation hours accrue each pay period based on Physician's length of service, as shown below. Vacation is pro-rated if employed less than a full year.

| | |
|---|---|
| Year 1-4: | 120 hours |
| Year 5-9 | 160 hours |
| Year 10+ | 200 hours |

Accrued vacation hours may be used after completion of 90 days of continuous employment. Unused vacation may be carried over into the next calendar year, but the carry-over hours together with the current year's accrual may not exceed 1¼ times the current year's accrual rate. No payments will be made in lieu of taking vacation, except for accrued unused vacation at the time of termination.

**SICK LEAVE**
One sick day per month is accrued (12 days per year). The maximum accrual is 960 hours.

**LONG-TERM DISABILITY**
The group long-term disability policy provides a monthly benefit of 60% of total cash compensation (salary plus bonus) up to $15,000 per month in the event of disability (unable to perform the essential duties of *your own occupation*) after a 90-day elimination period.

**HOLIDAYS**
Immediately upon employment, Physician is eligible for the following paid holidays:

- New Year's Day
- Memorial Day
- Independence Day
- Labor Day
- Thanksgiving Day
- Christmas Day
- Personal Day

**BUSINESS TRAVEL ACCIDENT COVERAGE**
In the event of accidental death while on employment-related business, this coverage will provide Physician's beneficiary (ies) with 3X Physician's annual earnings (maximum $500,000). Dismemberment and paralysis benefits are also included.

**LIFE INSURANCE/ACCIDENTAL DEATH AND DISMEMBERMENT**
After a 30-day waiting period Physician is eligible for basic group life at two times (2X) Physician's annual base salary to $600,000. The group life policy also includes accidental death and dismemberment insurance. This means that the amount of life insurance is doubled in the event of accidental death, whether it occurs on or off the job.

**GROUP HEALTH INSURANCE**
Beginning on the first day of the month following thirty (30) days of continuous employment, Physician is eligible to participate in programs, which provide comprehensive medical, dental and vision care for you and your dependents. While the Employer pays for most of the cost of this coverage, you are required to contribute a portion of the cost of coverage. The Human Resources Department can provide details of the coverage options available.

12

## 401(K) PLAN

Following six months of continuous employment, Physician is eligible to participate in the Employer's 401(k) Plan. Under the Plan, eligible employees may elect to have between 1-25% (to a maximum amount per year fixed by the IRS and as determined by the Plan as a result of required non-discrimination testing) of their gross compensation deferred to the Plan through payroll deductions as a savings contribution.

During the first full or partial calendar year of employment, a Physician may defer up to the permitted plan maximums. Beginning the first year a Physician is designated a highly compensated employee (HCE) in accordance with IRS guidelines, his or her participation in the 401(k) Plan will be limited to 4% for each year Physician is designated an HCE.

The first 6% of deferrals are eligible for an employer matching contribution of 33⅓%. Vesting for employer matching contributions is at 20% per year beginning in Year one. The Human Resources Department can provide other plan details.

## SUPPLEMENTAL SAVINGS PLAN

At the beginning of any calendar year that a Physician is designated as an HCE, his or her participation in the 401(k) Plan will be limited, and he or she will be eligible to participate in the 401(k) Supplemental Savings Plan. Under the terms of this plan, a Physician may defer 1% or 2% (in addition to 4% that may be deferred into the 401(k) Plan). Deferrals into this plan also receive a 33⅓ % employer matching contribution, subject to a similar vesting schedule as the 401(k) Plan. The Human Resources Department can provide other plan details.

## WORKERS' COMPENSATION INSURANCE

To provide for payment of medical expenses and for partial salary continuation in the event of a work-related accident or illness, you are covered by workers' compensation insurance. The amount of benefits payable and the duration of payment depend on the nature of the injury or illness. In general, however, all medical expenses incurred in connection with an injury or illness is paid in full, and partial salary payments are provided after the applicable elimination period.

## CME

Physician is entitled to five paid days and the CME amount each year. In the event Physician terminates this agreement for any reason other than death or total disability, or if Physician fails to maintain a Full-time Private Practice of Medicine in the Community, on behalf of Employer, for the duration of the Term of the Agreement, Physician shall immediately, upon demand, pay to Employer the unamortized amount of the total sums paid for CME on behalf of Physician pursuant to this Agreement (amortized each year the payment is received by Physician at a monthly rate of one twelfth (1/12th) of Physician's debt).

## MOVING AND RELOCATION

Employer agrees to reimburse Physician for the reasonable expenses associated with the relocation of normal household items incurred by Physician and Physician's family in connection with Physician's relocation to the Community. Upon Physician's relocation to the Community, Employer shall pay to Physician for relocation expenses an amount up to the Relocation Expense Amount. Employer does not include expenses for relocating large animals such as horses or livestock, boats, trailers, etc. In the event Physician terminates this agreement for any reason other than death or total disability, or fails to maintain a Full-time Private Practice of Medicine in the Community, on behalf of Employer, for the first twelve (12) months of the Term of the Agreement, Physician shall immediately, upon demand, pay to Employer the unamortized amount of the total sums paid for Moving and Relocation expenses on behalf of Physician pursuant to this Agreement (amortized over the first twelve (12) months of the Term of the Agreement at a monthly rate of one twelfth (1/12th) of Physician's debt). Should this Agreement be terminated by Employer, without cause, Physician shall not be held responsible for paying back any of the moving and relocation sums paid on behalf of or to Physician pursuant to this Agreement. Moving and Relocation assistance paid directly to Physician is subject to federal income tax, social security, Medicare and state income taxes and shall be withheld at time of payment. The amount shall be reported on Physician's Form W-2. Moving and relocation payments paid to a third party for direct moving expenses are

excludible from income and are not subject to federal income tax, social security, Medicare and state income tax.

## PRACTICE MANAGEMENT SEMINAR

Employer shall provide professional medical practice establishment assistance to help ensure an expeditious and efficient practice start-up. Employer will pay for Physician to attend a mandatory practice management/marketing seminar in Franklin, Tennessee offered by the Physician Practice Support Team.

## COMMENCEMENT BONUS

To further induce Physician to relocate to the Community within a specified time frame and to cover additional expenses in the connection with such relocation and the establishment of Physician's practice, Employer agrees to pay to Physician the Commencement Bonus Amount. The Commencement Bonus Amount shall be paid upon Physician's commencement, assuming Physician begins full-time practice no later than the Practice Commencement Date. In the event Physician terminates this agreement for any reason other than death or total disability, or fails to relocate to the Community by the Practice Commencement Date and/or fails to maintain a Full-time Practice of Medicine in the Community, on behalf of Employer, during the Term of the Agreement, Physician shall, upon demand, pay to Employer the un-amortized amount of the total sums paid for the Commencement Bonus on behalf of Physician pursuant to this Agreement (amortized over the Term of the Agreement at a monthly rate of one thirty-sixth (1/36th) of Physician's debt.)  The Commencement Bonus is subject to federal income tax withholding, social security, Medicare and state income tax withholding at the time of payment. The payment and related taxes shall be reported on Physician's Form W-2 in the year payment is made. Physician shall have submitted all necessary paperwork to complete required provider enrollment applications necessary to bill and collect for services rendered prior to the Practice Commencement Date. In the event all necessary paperwork is not completed within thirty (30) days post Practice Commencement Date, the Physician will forego that Commencement Bonus.

## AGREEMENT RELEASE

I authorize Employer, the Hospital, its medical staff (if applicable) and representatives to consult with the administrators, and members of medical staffs of other hospitals or relevant institutions with which I have been associated and with others, including, but not limited to governmental and professional organizations, educational institutions and past and present malpractice insurance carriers, who may have information bearing on my professional competence, character, and ethical qualifications. I hereby further consent to their inspection of all records and documents, including criminal and credit checks, medical records at other hospitals, that may be material to an evaluation of my professional qualifications and competence to carry out the clinical privileges requested as well as my moral and ethical qualifications for staff membership.

I hereby release from liability all representatives of the Employer, Hospital, facility and affiliates and its medical staff (if applicable) for their acts, performed in good faith and without intentional fraud, in connection with evaluating my application and my credentials and qualifications. I hereby release from any liability, all individuals and organizations who provide information to this hospital or its medical staff, in good faith and without intentional fraud, concerning my professional competence, ethics, character, and other qualifications for staff appointment and clinical privileges, and I hereby consent to the release of such information.

Charles B Lovebody
_____
Print Name

Charles B. Lovebody
_____
Signature

424·72·1715
_____
Social Security Number

5-14-08
_____
Date

15





# SOUTHAMPTON
## MEMORIAL HOSPITAL

**100 Fairview Drive • Franklin, Virginia 23851 • (757) 569-6100 • www.smhfranklin.com**

August 18, 2009

Charles Lovelady M.D.
1117 Belleville Avenue
Brewton, AL 35426

Dr. Lovelady:

In reviewing our employment contract we have determined that you did not fulfill your employment obligation as it relates to the $50,000 commencement bonus that was paid to you upon hire. A copy of page fourteen (14) reflecting the commencement bonus repayment obligation is attached for your reference.

You are now responsible for the un-amortized amount of the total sum paid. Your employment began with Southampton Memorial Hospital on 7/30/08 and ended on 6/24/09, therefore we are providing you with employment service credit of 12 months of the 36 month contract. The un-amortized amount due and payable to Southampton Memorial Hospital by you is $33,333.33.

It is my understanding that we have an outstanding amount due to you for additional on-call coverage during the month of June in the amount of $4,600.00. We will hold this check until the receipt of your payment in the amount indicated above. If you desire, we can apply this amount toward the outstanding balance reducing it to $28,733.33.

It is our desire to resolve this matter amicably avoiding the involvement of our corporate counsel. Please remit this amount due directly to address below within 30 days.

David Fuller, CEO
Southampton Memorial Hospital
100 Fairview Drive
Franklin, VA 23851

Good luck in your future endeavors

Respectfully,

*David W. Fuller*

David W. Fuller
Chief Executive Officer

**BAKER & McKENZIE**

Baker & McKenzie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201, USA

Tel: +1 214 978 3000
Fax: +1 214 978 3099
www.bakernet.com

Asia
Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
USA
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe &
Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South
America
Bogota
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

Wilson G. Jones
Tel: 214 978 3010
wilson.jones@bakernet.com

December 14, 2009

Charles B. Lovelady, M.D.                    Via Certified Mail No. 7150 3901 9845 2686 3855
1117 Belleville Avenue                        Return Receipt Requested
Brewton, AL 35426

Re:     Employment Agreement entered into on or about April 24, 2008 by and between
        Franklin Clinic Corp. and Charles B. Lovelady, M.D. ("Employment Agreement")

        May 20, 2009 Memorandum memorializing agreement regarding general surgery
        call coverage at Southampton Memorial Hospital ("Call Coverage Agreement")

Dear Dr. Lovelady:

        This law firm represents Franklin Clinic Corp. ("Employer") and Southampton
Memorial Hospital ("Hospital"). The Employer has notified us that you resigned from the
Employer effective June 24, 2009. Your Employment Agreement required you to provide
medical and surgical services on an exclusive, full-time basis to patients at the Hospital and
at other locations designated by the Employer for 36 months following your start date. You
resigned before those 36 months expired. Therefore, by your actions, you have breached the
Employment Agreement.

        As you are aware, under the Employment Agreement, the Employer advanced you
$50,000.00 as commencement bonus. The commencement bonus was to be forgiven based
on your maintaining a full-time practice of medicine in the Franklin, Virginia community on
behalf of the Employer over a 36-month period following your start date.

        In addition, under the Employment Agreement the Employer reimbursed you
$4,856.59 for continuing medical education expenses and $15,000.00 for relocation
expenses. The amounts the Employer reimbursed you for continuing medical education
expenses were to be forgiven based on your maintaining a full-time practice of medicine in
the Franklin, Virginia community on behalf of the Employer over the year in which the
reimbursement was made. The amounts the Employer reimbursed you for relocation
expenses were to be forgiven based on your maintaining a full-time practice of medicine in

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.



the Franklin, Virginia community on behalf of the Employer over the first 12 months following your start date.

The Employment Agreement also provided that in the event you terminate the Employment Agreement for any reason other than death or total disability, you shall, upon demand, pay to the Employer the unamortized amount of the commencement bonus advanced and continuing medical education and relocation expenses reimbursed. By failing to maintain a full-time practice of medicine in the Franklin, Virginia community on behalf of the Employer and terminating the Employment Agreement, you owe the Employer the unforgiven amounts it advanced you as commencement bonus and the unforgiven amounts it reimbursed you for continuing medical education and relocation expenses. Accordingly, pursuant to the repayment formula set forth in the Employment Agreement, you owe the Employer the following amounts:

| | |
|---|---|
| $50,000.00 | Commencement Bonus |
| 4,856.59 | Continuing Medical Education Expenses |
| 15,000.00 | Relocation Expenses |
| (15,000.01) | less forgiveness of Commencement Bonus (10 and 25/31 mos. x $1,388.89) |
| (4,370.98) | less forgiveness of Continuing Medical Education Expenses (10 and 25/31 mos. x $404.72) |
| (13,500.00) | less forgiveness of Relocation Expenses (10 and 25/31 mos. x $1,250) |
| (4,600.00) | less compensation for on-call services in June 2009 |
| $32,385.60 | Total Amount Due |

You may choose one of the following two options to repay the $32,385.60 you owe the Employer: (1) submit payment via certified check to the order of "Franklin Clinic Corp." to be received by no later than January 4, 2010, or (2) execute a promissory note and security agreement by no later than January 4, 2010 for the above-referenced amount with the note bearing interest at a fixed rate of prime plus one percent per annum. You must notify me in writing by December 28, 2009 as to which of the above options you have chosen.

If you fail to repay the above-referenced amounts, the Employer will be forced to pursue all available legal and equitable claims and remedies it has against you. In addition to the above amount, the Employer will also seek to recover prejudgment interest, attorneys fees and costs. By this letter, the Employer and the Hospital do not intend to waive, and nothing contained herein shall be construed as a waiver of, any of the rights and remedies of the Employer or the Hospital under the Employment Agreement, Call Coverage Agreement, or applicable law.

The Employer and the Hospital look forward to resolving these financial issues. In order to avoid the expense and inconvenience involved in pursuing this matter further, I

**BAKER & McKENZIE**

strongly urge you to make arrangements to pay the amount you owe under the Employment Agreement.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Wilson G. Jones

WGJ/rs
cc:   David W. Fuller, CEO



strongly urge you to make arrangements to pay the amount you owe under the Employment Agreement.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Wilson G. Jones

WGJ/rs
cc:      David W. Fuller, CEO